IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SINCERE POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| RS FINANCIAL SERVICES, LLC; RS ) | |
| FINANCIAL MANAGEMENT, LLC; ) | **JURY TRIAL DEMANDED** |
| AUTO PORTFOLIO SERVICES, LLC; ) | |
| WILLIAM MCKIBBIN; PAR, INC. d/b/a ) | |
| PAR NORTH AMERICA; and ) | |
| BUFFALO AUTO RECOVERY ) | |
| SERVICE, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Sincere Powell ("Plaintiff"), by her undersigned counsel, alleges, on knowledge as to herself and on information and belief as to all other matters, as follows:

**Introduction**

1. This is an action by an individual consumer for damages stemming from the defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which prohibits debt collectors from engaging in unfair, deceptive, or abusive practices in collecting consumer debts; and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO Act"), which prohibits any person from participating in the conduct of an enterprise through the collection of unlawful debt.  Here, the Defendants, together with unnamed coconspirator, Sovereign Lending Solutions, LLC d/b/a Title Loan America—which is a tribal enterprise shielded by tribal sovereign immunity and therefore not sued here—

have participated in an unlawful enterprise whose purpose is to make "title loans" in which the enterprise lends small amounts of money to consumers nationwide in return for exorbitant interest payments and a lien on the consumer's vehicle. The interest rates charged are far more than double New York's civil and penal usury limits, and the loans are therefore void and unenforceable and constitute "unlawful debt" as defined in the RICO Act. When payments are not made, the enterprise repossesses the consumer's car and sells it, retaining the proceeds, and denying the consumer any opportunity to redeem the vehicle or recover the excess over the loan balance, as required under applicable local law. Such repossession is unlawful under New York law because the lender takes no valid security interest in the vehicle.

2. The operation of the Enterprise is illustrated by the experience of Plaintiff Sincere Powell here. Sovereign—which is run out of the offices of Defendant RS Financial Services, LLC, by the latter's personnel, including Defendant McKibben—made a $1,250 title loan against Ms. Powell's 2003 Cadillac Escalade worth approximately $15,000, with interest payments due at a rate of an approximately 240% APR. Without ever disclosing this rate, particularly not in a form compliant with the Truth in Lending Act, and weeks before any payments were due, Sovereign began deducting putative interest payments from Ms. Powell's bank account. Without any written security agreement, Sovereign required Ms. Powell to execute a power of attorney authorizing Defendant RS Financial Management, LLC to file a lien against her vehicle with the New York DMV in favor of Sovereign. After Sovereign continued making early and unauthorized deductions from her bank account, Ms. Powell cancelled automatic payments and attempted to pay through other means. Refusing to accept payments by other means, Sovereign directed Defendant Auto Portfolio Services, LLC to recover Ms. Powell's car. APS directed PAR, a repossession placement agent that it uses routinely, to retain

a local repossession agent to repossess the vehicle. PAR retained Buffalo Auto Recovery Service, LLC to repossess the car. Despite the obviously void and unenforceable nature of the loan and despite the lack of any security agreement, and therefore the lack of any present right to possession of the car under New York law, Defendant Buffalo Auto Recovery Service, LLC repossessed the car and sent it to Pennsylvania to be sold at auction. When Plaintiff demanded that Sovereign, RS Financial Services, Buffalo Auto Recovery LLC, PAR, and APS provide her with notice of her redemption rights and accept payment of the full balance due as redemption of the vehicle, each refused to provide such notice, refused to allow redemption, and falsely stated that Ms. Powell did not have redemption rights and that no notice of such rights was legally required.

3. In effect, the Enterprise made an illegal loan of $1,250 and then stole Ms. Powell's $15,000 car, retaining the $13,750 excess as compensation for nonpayment of the illegal and unenforceable loan. For this criminal conduct, Ms. Powell seeks treble damages under the RICO Act.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over Plaintiffs' federal claims under 15 U.S.C. § 1692k(d), 18 U.S.C. §1964, and 28 U.S.C. § 1331.

5. Venue is proper in this district under 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because the Defendants transact business here and the conduct complained of occurred here.

**Parties**

6. Plaintiff Sincere Powell is a natural person domiciled in the City of Buffalo, County of Erie, and State of New York, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7. Defendant Buffalo Auto Recovery Service, LLC ("BARS") is a limited liability company organized and existing under the laws of the State of New York and headquartered at 76 Roberts Avenue, Buffalo, New York 14206.

8. BARS's primary business is the enforcement of others' security interests through the repossession of collateral. BARS uses instrumentalities of interstate commerce and the mails to conduct this business, and as such is a "debt collector" under 15 U.S.C. §§ 1692a(6) and 1692f(6).

9. Defendant Auto Portfolio Services, LLC ("APS"), is a limited liability company organized and existing under the laws of the State of Indiana with an address at 13085 Hamilton Crossing Blvd., Carmel, IN 46032. APS offers a broad array of pre-lending and post-lending services to lenders, including payment processing, collection of defaulted accounts, ordering repossessions, and liquidating repossessed vehicles.

10. APS regularly attempts to collect debts alleged to be due another, through communications by phone and in writing, and so is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11. Defendant PAR, Inc. ("PAR") is a corporation organized and existing under the laws of the State of Indiana with offices at 13085 Hamilton Crossing Blvd., Carmel, Indiana, which does business under the name PAR North America.

12. PAR's primary business is the enforcement of others' security interests through the repossession of collateral. PAR uses instrumentalities of interstate commerce and the mails to conduct this business, and as such is a "debt collector" under 15 U.S.C. §§ 1692a(6) and 1692f(6). Defendant PAR acts principally as a placement service to retain local repossession agents to conduct repossessions for its creditor clients.

13. PAR also regularly attempts to collect debts alleged to be due another, through communications by phone and in writing, and so is and has at all times pertinent hereto been a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14. Defendant RS Financial Management, LLC ("RSFM") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 550 NE Spanish River Blvd., Suite 15, Boca Raton, Florida 33431.

15. Defendant RS Financial Services, LLC ("RSFS") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 550 NE Spanish River Blvd., Suite 15, Boca Raton, Florida 33431. RSFS is in the business of servicing consumer loans for payday lenders and other subprime lenders. RSFS acts as managing member of RSFM.

16. Defendant William McKibbin is a natural person domiciled in Boca Raton, Florida, and is Vice President of Operations and Chief Operating Officer of RSFS.

17. Nonparty Sovereign Lending Solutions, LLC ("Sovereign") is a limited liability company organized and existing under the laws of the Lac Vieux Desert Band of Lake Superior Chippewa ("Lac Vieux Band"), a federally recognized Indian Tribe, *see* 25 U.S.C. § 1300h; Pub. L. No. 100-420, 102 Stat. 577 (1988). Sovereign has a mailing address at P.O. Box 249, Pow Wow Trail, Watersmeet, Michigan 49969, which is also a mailing address for the Lac

Vieux Band. However, as its principal place of business Sovereign operates out of RSFS's offices located at 550 NE Spanish River Blvd., Suite 15, Boca Raton, Florida 33431, and its lending functions are performed by RSFS, RSFM, and Mr. McKibbin.

18. Sovereign does business under the name Title Loan America and operates a website, titleloanamerica.com. It is in the business of making auto title loans to consumers nationwide over the Internet. It purports to be an economic development arm, instrumentality, and tribal enterprise of the Lac Vieux Band.

19. The acts of Defendants BARS, APS, PAR, RSFM, and RSFC alleged hereinafter were performed by their respective employees acting within the scope of their actual or apparent authority.

20. All references to "BARS," "APS," "PAR," "RSFM," and "RSFS" herein shall mean the respective entity or an employee thereof.

**Legal and Regulatory Background**

21. New York usury laws provide a general maximum interest rate of 16%, and provide that any loan made in excess of that maximum rate, unless made by a savings bank, savings and loan association, or federal savings and loan association, is void and unenforceable in its entirety as to both interest and principal. N.Y. General Obligation Law §§ 5-501(1)-(2), 5-511; N.Y. Banking Law § 14-a.

22. New York's usury laws further provide that it is an E Felony to knowingly charge in excess of 25% interest for a loan, and a C Felony to do so as part of a business whose purpose is to make such loans. N.Y. Penal Law §§ 190.40, 190.42.

23. New York's Licensed Lender Law permits licensed lenders to make loans in excess of these limits, provided the loan is for less than $25,000 and made for personal,

family, household, or investment purposes.  However, it is a misdemeanor to make a loan in excess of the 16% limit without having obtained such a license from the New York State Banking Department.  N.Y. Banking Law §§ 340, 358.  Neither Sovereign nor any of the other Defendants has ever obtained such a license.

24.     Under the New York Collateral Loan Brokers Law, N.Y. General Business Law Article 5, licensed pawnbrokers in New York may charge up to a 48% annual rate of interest, must give written notice to the debtor before selling collateral and, upon selling collateral, must return to the debtor any excess obtained through resale over the balance owed.  N.Y. General Business Law §§ 46, 49(1), 50.  It is a misdemeanor to carry out a pawn business in New York without a license.  *Id*. § 51.  Neither Sovereign nor any of the other Defendants has ever obtained such a license.

25.     New York law governing security interests in vehicles requires that any such interest be evidenced by a writing acknowledged by the debtor.  N.Y. U.C.C. § 9-203(b)(3).

26.     New York law requires that upon repossessing a debtor's car, the lender mail the debtor written notice of his or her redemption rights, of the intended disposition of the vehicle, and of the debtor's right to receive any excess over the balance due raised from a sale.  N.Y. U.C.C. §§ 9-611, 9-612, 9-613, 9-614; N.Y. Vehicle & Traffic Law § 425.

27.     A debtor whose car has been repossessed has the right under New York law to redeem the collateral by paying the balance due in full.  N.Y. U.C.C. § 9-623.

**Factual Allegations**

28.     In March 2012, Ms. Powell was seeking a small loan to be used for personal, family, or household purchases.  She applied online for such a loan, and her application was referred to Title Loan America, an alter ego of nonparty Sovereign, as her "loan officer."

29. Title Loan America's website offers what it calls a "title pawn" to customers in all 50 states. As described on the website, this transaction allows the consumer to borrow funds and repay at any time as long as periodic interest payments due every 31 days are made.

30. Ms. Powell completed an online loan application process to obtain a loan against the title to her 2003 Cadillac Escalade. Ms. Powell had recently purchased the car used for $15,000.

31. During the application process, Ms. Powell was required to fax copies of certain documents to Sovereign, including a drivers license, pay stubs, recent bank statement, proof of insurance, references, and pictures of the vehicle.

32. During the application process, Ms. Powell spoke by phone with a Sovereign employee, who told Ms. Powell that because she was obtaining the loan in March, her first payment would be due in April.

33. As part of the application process, Ms. Powell was required to authorize electronic withdrawals of interest payments from her bank account, which requirement as a condition of the loan was in violation of the Electronic Funds Transfer Act, 15 U.S.C. § 1693k.

34. Before committing to the loan, Ms. Powell was not provided any disclosure of loan terms, such as APR or finance charge, in the form required by the Truth in Lending Act, 15 U.S.C. § 1638(a).

35. As part of the application process, Ms. Powell was required to execute a New York State Department of Motor Vehicles power of attorney appointing Defendant RSFM as her attorney in fact with the authority to record a lien on her car with the DMV, and to mail

the power of attorney, New York DMV notice of lien, and original title to her car via Federal Express label addressed to Title Loan America at RSFS's Boca Raton office.

36. RSFS approved the loan, and Sovereign deposited $1,250 into Ms. Powell's bank account on or around March 16, 2012. Sovereign sent Ms. Powell an email on that date attaching a "loan renewal contract" signed by Defendant McKibben on behalf of Sovereign. That document disclosed that the interest rate on Ms. Powell's loan was "240.9% or 241.56% annual interest rate, as applicable." It stated the terms of the loan as, "1 monthly payment" of $1637.50, due on April 23, 2012.

37. The loan arose out of a transaction in which money, services, or property, which was the subject of the transaction, was primarily for personal, family, and/or household purposes. As such, it is a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

38. Despite the "renewal contract" payment schedule and the representations that the first payment would be due in April, and despite the 31-day payment schedule set forth in Sovereign's advertising, Sovereign automatically withdrew the first $57.75 interest payment from Ms. Powell's bank account and "renewed" the loan on March 23, 2012, only seven days after making the loan.

39. At the time it "renewed" the loan, Sovereign emailed Ms. Powell a "renewal contract," signed by Defendant McKibben on behalf of Sovereign. This renewal contract again disclosed an interest rate of "240.9% or 241.56%," but now it stated that one payment of $1505.75 was due April 23, 2012.

40. On March 28, 2012, Ms. Powell attempted to contact Sovereign by email and phone to determine why a payment had already been made on March 23, and when the next payment would be due. Because Sovereign disclosed payments were to be every 31 days, she

assumed there would be a 31-day interim between making of the loan and the first payment due date.

41. On or around April 1, 2012, Sovereign attempted to make another $57.75 withdrawal from Ms. Powell's bank account. Because Ms. Powell did not anticipate Sovereign making two withdrawals rather than zero in this period of time, the account had insufficient funds to support this payment and the attempt failed.

42. On April 9, 2012, Sovereign informed Ms. Powell by email that because the April 1 payment did not go through, a late fee was assessed, and that further collective action could follow if the payment was not made.

43. Ms. Powell contacted her bank to stop automatic payments to Sovereign. She then contacted Bill Perry, a Sovereign "Recovery Analyst" and attempted to pay by credit card. Mr. Perry stated that Sovereign could not take a credit card payment at that time, but would be able to do so within a few days and that he would call her back. He did not do so.

44. Sometime thereafter, Defendants RSFS and McKibbin directed Defendant APS to recover Ms. Powell's car. Defendant APS hired Defendant PAR to accomplish the repossession, and Defendant PAR retained Defendant BARS as its local repossession agent to physically retrieve the vehicle.

45. On May 20, 2012, Defendant BARS repossessed Ms. Powell's car.

46. Ms. Powell was never provided the written notice of repossession required to be provided within 24 hours under N.Y. Vehicle & Traffic Law § 425, nor was she ever provided any other notice setting forth her rights upon the repossession, including her right to redeem the vehicle.

47. After the repossession, Ms. Powell visited BARS's office and was told she should contact the lender to determine whether she could redeem the vehicle. She was also given a phone number for Defendant PAR as the company that ordered the repossession by Defendant BARS.

48. Ms. Powell phoned Defendant PAR, which stated that she would not be allowed to redeem the car by paying the full amount due, and that because she had "pawned" the car, the lender was entitled to keep and sell it. All of these statements were false and misleading in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10). Defendant PAR also provided Ms. Powell with the phone number for Defendant APS, as the company that had ordered the repossession from it.

49. Ms. Powell phoned Defendant APS, which stated that she would not be allowed to redeem the car by paying the full amount due, and that because she had "pawned" the car, the lender was entitled to keep and sell it. All of these statements were false and misleading in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

50. Ms. Powell also phoned Sovereign and spoke to an employee of Defendant RSFS who purported to be acting as a representative of Sovereign. Ms. Powell informed the individual she spoke with that she desired to pay back the entire amount claimed due under the loan in order to recover her vehicle. The individual informed her that she would not be permitted to do this, and that Sovereign intended to sell her car and retain the proceeds in their entirety.

51. Ms. Powell learned thereafter from Defendant BARS that her car had been shipped to Pennsylvania and was to be sold at auction. She still never received any written notice of this.

**Causes of Action**

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Violation of Fair Debt Collection Practices Act by Defendants BARS, PAR, and APS)**

52. Plaintiff repeats and realleges paragraphs 1 through 51 of her Complaint as though fully set forth in this paragraph.

53. Ms. Powell never executed a written security agreement with Sovereign. As a result, at the time that Defendant BARS repossessed Plaintiffs' vehicle on or about May 20, 2012, neither it nor Defendant PAR nor Defendant APS nor nonparty Sovereign had a present right of possession of the vehicle.

54. Furthermore, Ms. Powell Sovereign had no right to take any action to collect the alleged debt, because the loan at an approximately 240% interest rate was void and unenforceable ab initio under N.Y. General Obligation Law § 5-511 and, indeed, Sovereign committed a C Felony by making the loan, N.Y. Penal Law § 190.42. For this reason, also, at the time that Defendant BARS repossessed Plaintiff's vehicle on or about May 20, 2012, neither it nor Defendant PAR nor Defendant APS nor nonparty Sovereign had a present right of possession of the vehicle.

55. Defendant BARS repossessed Plaintiffs' vehicle at a time that neither it nor Sovereign had a present right of possession, in violation of 15 U.S.C. § 1692f(6) of the FDCPA.

56. In carrying out the repossession, Defendant BARS acted at the insistence of and at the direction and control of Defendant PAR, which acted at insistence of and at the direction and control of Defendant APS.

57. Subsequent to the repossession, Defendants PAR and APS each made false and misleading statements to Plaintiff regarding her legal rights, telling her that Sovereign

had the right to sell the collateral, that she had "pawned" the car, that she had no right to redeem the collateral because the car had been "pawned," that she had no right to receive notice of redemption rights because the car had been "pawned," and that she had no right to receive any excess over the balance due raised by selling the collateral.  All of these false and misleading statements (most of which would be false and misleading even if the car had been "pawned") and so were violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10).

58. As a result of BARS's, PAR's, and APS's violations of the FDCPA, Plaintiff has suffered actual damages, including loss of approximately $15,000 equity in her car, the inconvenience of not having a car, mental anguish, emotional distress, stress, anxiety, embarrassment, humiliation, anger, and worry.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Violation of Racketeer Influenced and Corrupt Organizations Act by All Defendants)**

59. Plaintiff repeats and realleges paragraphs 1 through 58 of her Complaint as though fully set forth in this paragraph.

60. Under 18 U.S.C. § 1962(a), it is "unlawful for any person who has received income derived, directly or indirectly, from . . . collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

61. Under 18 U.S.C. § 1962(b), it is "unlawful  for any person . . . through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

62. Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through . . . collection of unlawful debt."

63. Under 18 U.S.C. § 1962(d), it is unlawful for any person to conspire to violate 18 U.S.C. § 1962(a), (b), or (c).

64. 18 U.S.C. § 1961(6) defines "unlawful debt" to include a debt "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury" and "which was incurred in connection with the business . . . of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate."

65. As set forth above, at all relevant times, the maximum enforceable interest rate in New York has been 16%, and contracts purporting to charge more are void and unenforceable. Moreover, New York treats lending at more than 25% interest as a felony.

66. As set forth above, the loan from Sovereign to Ms. Powell was at an interest rate in excess of 240%, and so far more than double the maximum enforceable rate. Indeed, it was more than ten times the criminal rate. The loan was therefore clearly an "unlawful debt" as defined in 18 U.S.C. § 1961(6).

67. Sovereign is in the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate. Indeed, Sovereign routinely makes loans at exorbitant interest rates far greater than double the enforceable rate in the jurisdictions where the loans are made.

68. 18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

69. On information and belief, Defendants RSFS, RSFM, and McKibbin have participated in the operation, management, and direction of Sovereign's unlawful lending activities out of Defendant RSFS's Boca Raton office—which is also the principal office of Sovereign—and Defendants RSFS, RSFM, and McKibbin have received fees from Sovereign derived from the unlawful lending activity in return for doing so.

70. On information and belief, Sovereign and Defendants RSFS, RSFM, and McKibbin routinely employ Defendant APS to provide various services in furtherance of the collection of unlawful loans made by Sovereign, including processing payments, collecting defaulted accounts, ordering repossessions, and disposing of repossessed vehicles. In return for doing so, Defendant APS receives fees derived from the collection of the unlawful loans.

71. On information and belief, Defendant APS routinely retains Defendant PAR—whose headquarters is on the same street as and near to Defendant APS's headquarters—to repossess collateral as needed in order to collect the unlawful loans, and in return for doing so, Defendant PAR receives fees derived from the collection of the unlawful loans.

72. Sovereign and Defendants RSFS, RSFM, McKibbin, APS, and PAR have entered into an Enterprise to make illegal title loans. This Enterprise is engaged in or conducts activities that affect interstate commerce.

73. Defendant BARS has been employed by the Enterprise to collect unlawful debts by repossessing collateral in the Buffalo area.

74. In violation of 18 U.S.C. § 1962(a), Sovereign and Defendants RSFS, RSFM, McKibbin, APS, and PAR have participated in the enterprise's collection of unlawful debts as principals, and received income derived directly or indirectly from the Enterprise's collection of unlawful debts, and have used or invested such income directly or indirectly in the establishment or operation of the Enterprise, in that they have continued to aid, abet, counsel, command, induce, procure, or willfully cause acts to be done that further the purposes of the Enterprise.

75. In violation of 18 U.S.C. § 1962(b), Sovereign and Defendants RSFS, RSFM, and McKibbin have acquired or maintained, directly or indirectly, an interest in or control of the Enterprise, in that Defendants RSFS, RSFM, and McKibbin jointly manage, direct, and control the Enterprise out of Defendant RSFS's offices in Boca Raton, Florida.

76. In violation of 18 U.S.C. § 1962(c), Sovereign and Defendants RSFS, RSFM, McKibbin, APS, PAR, and BARS have been employed by or associated with the Enterprise and have conducted the affairs of the Enterprise through the collection of unlawful debts.

77. In violation of 18 U.S.C. § 1962(d), Defendants RSFS, RSFM, and McKibbin, APS, PAR, and BARS have conspired with one another and with Sovereign to violate each of 18 U.S.C. § 1962(a), (b), and (c).

78. Ms. Powell has been injured in her business or property as a direct and proximate result of Sovereign's and Defendants RSFS's, RSFM's, McKibbin's, APS's, PAR's, and BARS's violations of 18 U.S.C. § 1962.

## Jury Demand

79. Plaintiff demands a trial by jury in this action.

## Prayer for Relief

WHEREFORE, Plaintiff Sincere Powell respectfully demands that the Court enter judgment against Defendants for:

A. As to her first cause of action, an award of actual damages jointly and severally against BARS, PAR, and APS and for Plaintiff, pursuant to 15 U.S.C. § 1692k(a)(1), in an amount no less than $23,000; an award of statutory damages of $1,000 jointly and severally against BARS, PAR, and APS and for Plaintiff, pursuant to 15 U.S.C. § 1692k(a)(2)(A); and an award of costs, disbursements, and reasonable attorneys' fees jointly and severally against BARS, PAR, and APS and for Plaintiff, pursuant to 15 U.S.C. § 1692k(a)(3);

B. As to her second cause of action, an award of three-fold actual damages jointly and severally against RSFS, RSFM, McKibbin, APS, PAR, BARS, and for Plaintiff, pursuant to 18 U.S.C. § 1964(c), in an amount no less than $69,000; and an award of costs, disbursements, and reasonable attorneys' fees jointly and severally against RSFS, RSFM, McKibbin, APS, PAR, BARS and for Plaintiff, pursuant to 18 U.S.C. § 1964(c);

C. Pre-judgment and post-judgment interest on all of the above judgments; and

D. Such other and further relief as this Court may deem just and proper.

Dated: Buffalo, New York
July 9, 2012

Matthew A. Parham
Law Offices of Matthew A. Parham
70 Niagara Street, Suite 210
Buffalo, New York 14202
(716) 218-8876
matthew@matthewparhamlaw.com

*Attorney for Plaintiff Sincere Powell*

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF ERIE       )

SINCERE POWELL, being duly sworn, deposes and says:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled Complaint prepared by my attorney and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this Complaint in good faith and solely for the purposes set forth in it.

_____
Sincere Powell

Sworn to before me this
9th day of July, 2012

_____
Notary Public

MATTHEW ALAN PARHAM
NOTARY PUBLIC-STATE OF NEW YORK
No. 02PA6224317
Qualified in Kings County
My Commission Expires June 28, 2014

- 18 -